**HAUENSTEIN & BERMEISTER, INC., Appellant,**

v.

**MET–FAB INDUSTRIES, INC.,
etc., Respondent.**

**McNeil Corporation, et al., Defendants.**

No. 81–1172.

Supreme Court of Minnesota.

June 25, 1982.

Gray, Plant, Mooty, Mooty & Bennett, Stephen J. Snyder and Andrew R. Kislik, Minneapolis, for appellant.

Grossman, Karlins, Siegel & Brill and Robert L. Weiner, Minneapolis, for respondent.

AMDAHL, Chief Justice.

This is an appeal from an order of the Hennepin County District Court dated September 8, 1981, granting the motion of respondent Met-Fab Industries, Inc. (Met-Fab), for dismissal of appellant's complaint for want of jurisdiction.[1]

The action arises out of the January 1981 sale of a used press brake by Met-Fab, a Florida corporation and a broker of industrial equipment, to appellant Hauenstein & Burmeister, Inc. (H & B), a Minnesota cor-

poration, for $63,000. Met-Fab entered into negotiations with H & B for the sale of the press brake sometime in 1980.[2] In January of 1981, an H & B employee went to Pennsylvania to inspect the press brake at the plant of defendant Tonnard Manufacturing Company. On January 23, 1981, H & B indicated that it wanted to purchase the press brake from Met-Fab, and issued a formal purchase order for the sale. On the same date, H & B gave the president of defendant Met-Fab Industries of Southern Minnesota, Inc. (MFSM), which is owned in part by Met-Fab, a $12,000 downpayment check. MFSM forwarded the check to Met-Fab in Miami, Florida.

In response to the purchase order, Met-Fab sent a copy of its proposed sales agreement to Martin Beckman, vice president of H & B, on January 26, 1981. Beckman executed the sales agreement on behalf of H & B and returned it to Met-Fab on January 29, 1981. The sales agreement contained a forum selection provision, which provided:

> This agreement shall be construed as having been delivered in the State of Florida, shall be construed in accordance with the laws of Florida *and the parties hereto expressly agree that venue shall be in the State of Florida only*, and, in addition, the undersigned hereby consents to the jurisdiction of the courts of the State of Florida, County of Dade, and the U. S. District Court, Southern District of Florida * * *. [emphasis added]

None of the other parties to this action is a party to the sales agreement.[3]

---

1. The lower court's statement that it lacked jurisdiction is not completely accurate. The court had jurisdiction over the matter but chose not to exercise it to give effect to the forum selection clause that is at issue in this appeal.

2. The press brake, manufactured by McNeil Corporation, was sold originally to a California firm which returned it to McNeil in return for a full refund because the brake would not operate properly. McNeil worked on the press brake in its R & D department for two years, but was unable to correct its deficiencies. In 1978, the brake was sold as scrap metal in Cleveland, Ohio, to either defendant Lenton Manufacturing Company or to defendant Leonard Bills, both of which are affiliated with de-

fendant Tonnard Manufacturing Company. Met-Fab apparently paid Tonnard $43,000 for the press brake before reselling it to appellant for $63,000.

3. Appellant argues, by affidavit, that it purchased the press brake pursuant to an oral agreement made by telephone on January 23, 1981, and that the written sales agreement, which contains the forum selection clause, "was not a part of the parties' sale transaction." However, counsel for appellant has not argued in his brief that the written contract is without force, and, in fact, appellant's argument tacitly accepts the written contract. Appellant even admits that the agreement "was received, signed, and returned on January 29,

The press brake was delivered to appellant in Minneapolis in March of 1981. When the press brake would not operate as expected, H & B made unsuccessful attempts to revoke acceptance and to rescind the contract. In June of 1981, H & B filed suit in Hennepin County District Court seeking to revoke acceptance or to rescind the contract and claiming damages based on breach of warranty and misrepresentation. H & B named as defendants, in addition to Met-Fab, McNeil Corporation, the manufacturer of the press brake whose principal place of business is Ohio; Tonnard Manufacturing Company and Lenton Manufacturing Company, foreign corporations based in Pennsylvania and Ohio; respectively; MFSM, a Florida corporation doing business in Minnesota, and Leonard Bills, a nonresident individual. Defendants Tonnard, Lenton, and Bills have failed to appear in the action, and H & B obtained default judgments against them on January 4, 1982.

Met-Fab's answer to the complaint asserted the forum selection clause as a defense. The answer also asserted crossclaims against the codefendants based upon implied and equitable indemnification, contribution, negligent misrepresentation, rescission, and breach of contract. Finally, Met-Fab asserted a counterclaim against H & B for attorneys fees under Minn.Stat. § 549.21 (1980) (prosecuting a civil action in bad faith).[4] Shortly after filing its answer, Met-Fab brought its motion to dismiss based on the forum selection provision. The order from which H & B appeals granted Met-Fab's motion on the ground that H & B failed to meet its burden of showing that the forum selection provision was unreasonable. On appeal, H & B urges that we permit resolution of the controversy in Hennepin County District Court, either by invalidating the forum selection clause as against public policy or by striking down the clause as unreasonable under the facts of this case.

■ The only Minnesota decision on point is *Detwiler v. Lowden*, 198 Minn. 185, 269 N.W. 367 (1936), where this court stated in dicta that "provisions *regarding future* causes of action and *unreasonable* limitations in respect to the tribunal where the causes of action may be litigated"[5] might not be enforced. *Id.* at 190, 269 N.W. at 369 (emphasis added). In that case, however, we held that the covenant in the contract, having been made after the cause of action accrued, stood on a different basis, since one in whose favor a cause of action has accrued is free to enter any stipulation he chooses with regard to it, provided there is no misrepresentation or fraud or mutual mistake. *Id.* We concluded that "[t]here does not appear any reason for denying one who has an accrued cause of action which he may settle and release to stipulate, for a valuable consideration, to try such cause of action in a particular court having jurisdiction." *Id.* *Detwiler* is in accord with the traditional rule, which a diminishing number of jurisdictions still follow, that forum selection clauses relating to future causes of action will be refused enforcement, while those relating to existing causes of action will be enforced. *See* Annot., 56 A.L.R.2d 300, 304–05 (1957).

Federal courts sitting in Minnesota have not followed *Detwiler*. Noting a "lack of current precedent" in Minnesota concerning forum selection clauses, the court in *Matthiessen v. National Trailer Convoy, Inc.*, 294 F.Supp. 1132 (D.Minn.1968), adopted the

---

1981." We find no merit in the contention that the written sales agreement does not govern this transaction.

4. On October 26, 1981, Met-Fab voluntarily dismissed its cross-claims and counterclaim pursuant to Minn.R.Civ.P. 41.01 and 41.03. On January 28, 1982, MFSM dismissed a crossclaim it had asserted against Met-Fab. Thus, with the exception of this appeal, Met-Fab's ties with the underlying sales action have been severed; it has no counterclaim or cross-claim pending in any Minnesota court.

5. As support for this statement the *Detwiler* court cited *State v. Tazwell*, 125 Or. 528, 266 P. 238 (1928), which held that forum selection clauses were void per se. The Oregon court retreated from that holding in *Reeves v. Chem Industrial Co.*, 262 Or. 95, 495 P.2d 729 (1972), where the court stated that "we no longer endorse the proposition that such clauses are void." *Id.* at 101, 495 P.2d at 732.

modern view that a court "may in its discretion refuse to assert its jurisdiction if, upon the facts in the present case, the agreement does not appear unreasonable." *Id.* at 1134–35. The federal court in *Matthiessen* determined that the forum selection clause was unreasonable because "it is doubtful that the jurisdictional limitation was equally bargained for" and because the expense of litigating in the chosen forum would have seriously impaired the party's ability to prosecute its claim. *Id.* at 1135.

In *Kline v. Kawai America Corp.*, 498 F.Supp. 868 (D.Minn.1980), the federal court, concluding that the reasonableness test would be followed in Minnesota, enforced the forum selection clause in the case before it. The *Kline* court articulated several factors relevant to the determination of reasonableness, including (1) which law governs the formation and construction of the contract; (2) the residency of the parties; (3) the place of execution and/or performance of the contract; (4) the location of the parties and witnesses probably involved in the litigation; (5) the inconvenience to the parties; and (6) whether the provision was equally bargained for. *Id.* at 871–72.

Courts have not favored forum selection clauses. Many courts, both federal and state, have declined to enforce them, either because they are "contrary to public policy," or because their effect is to "oust the court of jurisdiction." These reasons for denying effect to choice of forum clauses are unconvincing. The first reason does no more than state a conclusion without any attempt at explanation. As to the second, it is true, of course, that the parties cannot oust a court of jurisdiction by their agreement. But to phrase the problem in such terms is to misconceive the issue. The real issue is whether a court should refrain from exercising the jurisdiction that it admittedly possesses to give effect to the parties' intentions as expressed in a forum selection clause. Gilbert, *Choice of Forum Clauses in International and Interstate Contracts*, 65

Ky.L.J. 1, 9–10 (1976). Because a court is not always required to exercise its jurisdiction, it may, in its discretion, dismiss a suit on the ground that it was not brought in a forum selected by the parties. In *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court laid to rest the "ouster of jurisdiction" theory:

The argument that such clauses are improper because they tend to "oust" a court of jurisdiction is hardly more than a vestigial legal fiction. It appears to rest at core on historical judicial resistance to any attempt to reduce the power and business of a particular court and has little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets. It reflects something of a provincial attitude regarding the fairness of other tribunals.

*Id.* at 12, 92 S.Ct. at 1914.

In support of the modern rule, persuasive public policy reasons exist for enforcing a forum selection clause in a contract freely entered into by parties who have negotiated at arm's length. First, the modern approach "accords with ancient concepts of freedom of contract and reflects an appreciation of the expanding horizons" of American business. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 11, 92 S.Ct. at 1914. Second, forum selection clauses provide a degree of certainty to business contracts by obviating jurisdictional struggles and by allowing parties to tailor the dispute resolution mechanism to their particular situation. Finally, such clauses allow parties to select a forum convenient for both sides; they may choose the forum because of its neutrality, or because of its expertise in the particular subject matter of their contract. Gilbert, *supra* at 2–3.

Thus, it is not surprising that the current trend is toward adopting the modern rule, which finds such agreements not per se invalid, but enforceable in the discretion of the court if not unreasonable.[6] It is the

6. *See, e.g., The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Kline v. Kawai American Corp.*, 498 F.Supp. 868 (D.Minn.1980); *Matthiessen v. National Trailer Convoy, Inc.*, 294 F.Supp. 1132 (D.Minn.1968); *Hester v. Clinic Masters, Inc.*,

view advanced by noted scholars[7] and that adopted by the Restatement of the Conflict of Laws.[8] We agree with these authorities and therefore hold that when the parties to a contract agree that actions arising from that contract will be brought in a particular forum, that agreement should be given effect unless it is shown by the party seeking to avoid the agreement that to do so would be unfair or unreasonable. To the extent that *Detwiler* is inconsistent with our opinion, it is overruled.

■ Having adopted the modern rule, we next must enumerate the factors to be considered in determining whether a forum selection clause is unreasonable, and then apply those factors to the case before us. While any test of reasonableness necessarily requires a case-by-case determination, it is useful to identify those considerations that the court will look to in each case. The elements of unreasonableness can be divided into three categories: (1) the chosen forum is a seriously inconvenient place for trial; (2) the choice of forum agreement is one of adhesion; and (3) the agreement is otherwise unreasonable.

In *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court stated that for the chosen forum to be "seriously inconvenient," one party would have to be "effectively deprived of a meaningful day in court." *Id.* at 19, 92 S.Ct. at 1918. The only case in which inconvenience was determinative is *Matthiessen v. National Trailer Convoy, Inc.*, 294 F.Supp. 1132 (D.Minn. 1968), where the plaintiff alleged that he would be unable to prosecute his claim if the forum clause was enforced. *Id.* at 1135. Appellant has made no such allegation in

this case. He does argue that Met-Fab is the only Florida corporation involved in the litigation and that other parties have significant contacts with Minnesota. This argument would be more persuasive, however, if the three defendants who have had default judgments entered against them still were parties to the litigation. We note also that MFSM, which is still a party to the action, is a Florida corporation. With respect to the location and convenience of witnesses, a consideration not expressly raised by appellant, other courts have noted, and we agree, that deposition testimony can be taken without disadvantage because the witnesses do not appear personally. *See Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal.3d 491, 551 P.2d 1206, 131 Cal.Rptr. 374 (1976); *Prudential Resources Corp. v. Plunkett*, 583 S.W.2d 97 (Ky.Ct.App.1979).

The defense that the forum is seriously inconvenient will not be successful in the usual case because the presumption is that consideration was received at the time of contracting for the alleged inconvenience. *Central Contracting Co. v. C. E. Youngdahl & Co.*, 418 Pa. 122, 209 A.2d 810 (1965). A party "cannot be heard to complain about inconvenience resulting from an agreement it freely entered into." *Full-Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F.Supp. 71, 74 (S.D.N.Y.1978). Thus the inconvenience factor is tied to the question whether the clause was equally bargained for, since the remoteness of the selected forum might suggest that the agreement was an adhesive one; "yet even there the party claiming should bear a heavy burden of proof." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 17, 92 S.Ct. at 1917 (footnote omitted).

371 So.2d 915 (Ala.Civ.App.1979); *Smith, Valentino & Smith, Inc. v. Superior Court*, 17 Cal.3d 491, 551 P.2d 1206, 131 Cal.Rptr. 374 (1976); *Prudential Resources Corp. v. Plunkett*, 583 S.W.2d 97 (Ky.Ct.App.1979); *Reeves v. Chem Industrial Co.*, 262 Or. 95, 495 P.2d 729 (1972); *Central Contracting Co. v. C. E. Youngdahl & Co.*, 418 Pa. 122, 209 A.2d 810 (1965); *Green v. Clinic Masters, Inc.*, 272 N.W.2d 813 (S.D.1978).

7. *See, e.g.*, Gilbert, *Choice of Forum Clauses in International and Interstate Contracts*, 65 Ky.

L.J. 1 (1976); Reese, *The Contractual Forum: Situation in the United States*, 13 Am.J. Comp.L. 187 (1964); A. Ehrenzweig, *Conflict of Laws* § 41 (1962).

8. Restatement (Second) of the Conflict of Laws § 80 (1971) provides that "[T]he parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction, but such an agreement will be given effect unless it is unfair or unreasonable."

■ Forum selection clauses in contracts which are termed adhesion—"take-it-or-leave-it"—contracts and which are the product of unequal bargaining power between the parties are unreasonable. *Matthiessen v. National Trailer Convoy, Inc.*, 294 F.Supp. 1132 (D.Minn.1968); *Reeves v. Chem Industrial Co.*, 262 Or. 95, 495 P.2d 729 (1972); Reese, *The Contractual Forum: Situation in the United States*, 13 Am.J.Comp.L. 187, 188 (1964). In support of the view that the contract before this court is one of adhesion, it could be argued that the forum selection clause is boilerplate language contained in a printed form contract prepared by respondent on a "take-it-or-leave-it" basis. However, these factors alone do not define adhesion contracts. Appellant has not shown, for example, a great disparity in bargaining power, that there was no opportunity for negotiation, or that the press brake could not have been obtained elsewhere. *See Green v. Clinic Masters, Inc.*, 272 N.W.2d 813, 816 (S.D. 1978). The clause in question was not written in technical jargon and was contained in an easily readable contract and consisting of only two pages. Appellant is not an unsophisticated individual, but a business corporation that presumably has personnel able to evaluate agreements such as that involved in this case. In short, the choice of forum was made in an arm's-length transaction between persons having business experience; it should be honored by the parties and enforced by the courts absent some compelling and countervailing reason. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 12, 92 S.Ct. at 1914; *Kline v. Kawai American Corp.*, 498 F.Supp. 868 (D.Minn. 1980).

Other indications of unreasonableness in forum selection agreements are sure to arise where for reasons other than those enumerated above, to enforce the agreement would be unfair or unreasonable. One example is where enforcement of the forum selection clause "would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 15, 92 S.Ct. at 1916. Appellant raises an argument that fits squarely within this consideration. Appellant contends that our holding in *Prestressed Concrete, Inc. v. Adolfson & Peterson, Inc.*, 308 Minn. 20, 240 N.W.2d 551 (1976), that in complex multiparty litigation the policies supporting arbitration will be balanced against the interests of parties not subject to the arbitration agreement and the policies supporting joinder of all related parties and claims, should be extended to this case. Such an extension of the holding in *Prestressed* is unwarranted. The *Prestressed* rule seeks to protect the interests of parties who are not signatories to the arbitration agreement; the parties in this case, who are situated similarly to the nonsignatory parties in *Prestressed*, have defaulted and are no longer part of the litigation. Therefore, even assuming *Prestressed* is applicable, no need exists to balance their interest in litigating in a convenient forum against the policy supporting enforcement of forum selection agreements. Put simply, this case does not present the complex multiparty litigation to which the *Prestressed* rule was meant to apply. Moreover, the *Prestressed* rule is not intended to accord the party to an agreement a means of avoiding it, which is how appellant seeks to have it applied here.

■ In summary, this case involves a freely negotiated commercial contract between a Minnesota corporation and a Florida corporation. Selection of a Florida forum was a reasonable effort to bring certainty to the transaction and to provide a presumably neutral forum experienced and capable in the resolution of commercial sales litigation. Whatever inconvenience H & B would suffer by being forced to litigate in the contractual forum, as it agreed to do, was certainly foreseeable at the time of contracting. Under such circumstances it is incumbent upon the party seeking to escape the contract to show that to be forced to litigate in the contractual forum would be unreasonable. Appellant has failed to make such a showing.

Appellant also contends that Met-Fab waived the forum selection clause by asserting a claim in its answer for attorneys fees

based on Minn.Stat. § 549.21 (1980) and by asserting cross-claims against other named defendants. We reject this argument.

Appellant cites a number of cases in which federal courts have held that the assertion of a claim for affirmative relief, usually in the form of a permissive counterclaim, constitutes a waiver of the defenses of improper venue and lack of personal jurisdiction. *See, e.g., Freeman v. Bee Machine Co.,* 319 U.S. 448, 454, 63 S.Ct. 1146, 1149, 87 L.Ed. 1509 (1943); *Thompson v. United States,* 312 F.2d 516 (10th Cir. 1962), *cert. denied,* 373 U.S. 912, 83 S.Ct. 1303, 10 L.Ed.2d 414 (1963); *Medicenters of America, Inc. v. T and V Realty & Equipment Corp.,* 371 F.Supp. 1180 (E.D.Va.1974). None of the cases relied upon by appellant involved a *contractual* forum selection clause. This case is not governed by the rules relating to venue and jurisdiction, but rather by the rules for waiver of contractual defenses. The assertion of counterclaims and cross-claims is irrelevant to the determination of whether respondent waived the contractual forum selection clause.

 In contract law, a waiver is defined as an *intentional* relinquishment of a known right, and it must "clearly be made to appear from the facts disclosed." *Kennedy v. Hasse,* 262 Minn. 155, 159, 114 N.W.2d 82, 85 (1962); *see* J. Calamari & J. Perillo, *The Law of Contracts* 446 (2d ed. 1977). Applying this test, there can be no doubt that respondent did not intend, at any time in the litigation, to waive the forum selection clause. Respondent's assertion of a counterclaim and cross-claims does not express an intent to waive the contractual defense, especially when that defense is interposed in the same pleading. To hold, as appellant urges, that respondent waived the forum selection clause by pleading affirmatively would undermine the spirit of the Rules of Civil Procedure, which permit a party to "state as many separate claims or defenses as he has regardless of consistency." Minn.R.Civ.P. 8.05.

Affirmed.